Matter of State of New York v George N. (2018 NY Slip Op 00942)





Matter of State of New York v George N.


2018 NY Slip Op 00942


Decided on February 9, 2018


Appellate Division, Fourth Department


NeMoyer, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 9, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., PERADOTTO, DEJOSEPH, NEMOYER, AND CURRAN, JJ.


1473 CA 16-01513

[*1]IN THE MATTER OF STATE OF NEW YORK, PETITIONER-RESPONDENT,
v
GEORGE N., RESPONDENT-APPELLANT. 






EMMETT J. CREAHAN, DIRECTOR, MENTAL HYGIENE LEGAL SERVICE, BUFFALO (VICKY L. VALVO OF COUNSEL), FOR RESPONDENT-APPELLANT. 
ERIC T. SCHNEIDERMAN, ATTORNEY GENERAL, ALBANY (FRANK BRADY OF COUNSEL), FOR PETITIONER-RESPONDENT. 


NeMoyer
 Appeal from an order of the Supreme Court, Erie County (John L. Michalski, A.J.), entered June 3, 2016 in a proceeding pursuant to Mental Hygiene Law article 10. The order, among other things, revoked respondent's release to strict and intensive supervision and treatment and committed respondent to a secure treatment facility. 
It is hereby ORDERED that the order so appealed from is unanimously reversed on the law without costs and the petition is denied.
Opinion by NeMoyer, J.:
The State may not civilly confine a sex offender in a locked treatment facility unless it proves that he or she has an "inability" to control sexual misconduct (Mental Hygiene Law § 10.03 [e]). The statute means what it says, and the State's proof falls short of that threshold in this case.
FACTS
Respondent, now 61 years old, has been convicted of several sexually-related crimes dating back to the early 1980s. His most recent conviction stems from an incident that occurred in 1995, and it is undisputed that he has not offended sexually since then. It is likewise undisputed that respondent has made excellent progress in sex offender treatment.
In 2010, the State filed a civil management petition against respondent pursuant to Mental Hygiene Law article 10. In connection with this proceeding, respondent was diagnosed with anti-social personality disorder (with psychopathic traits) and alcohol abuse disorder [FN1]. Respondent subsequently admitted that he suffers from a
" mental abnormality' " within the meaning of Mental Hygiene Law
§ 10.03 (i), and he was eventually released to a regimen of strict and intensive supervision and treatment (hereafter, SIST).
Respondent thereafter consumed alcohol. That was a violation of his SIST conditions, and the State filed a SIST revocation petition pursuant to Mental Hygiene Law § 10.11 (d) seeking respondent's civil confinement. Supreme Court conducted an evidentiary hearing on the petition; the object of this hearing was to determine whether respondent was a " dangerous sex [*2]offender requiring confinement' " under section 10.03 (e), or whether he remained a " sex offender requiring [SIST]' " under section 10.03 (r) (see § 10.11 [d] [4]). The State bore the burden of proof on this issue by clear and convincing evidence (see § 10.07 [f]). The court found that respondent is a dangerous sex offender requiring confinement, and it therefore committed him to a locked treatment facility maintained by the Department of Mental Hygiene.
Respondent appeals, and we now reverse.
DISCUSSION
A " dangerous sex offender requiring confinement' " is a person who, inter alia, suffers from a "mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that [he or she] is likely to be a danger to others and to commit sex offenses if not confined" (Mental Hygiene Law
§ 10.03 [e]). The word "inability" takes center stage in this definition. In Matter of State of New York v Michael M. (24 NY3d 649 [2014]), the Court of Appeals wrote that the article 10 framework "clearly envisages a distinction between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients' and only the latter may be confined" (Michael M., 24 NY3d at 659 [emphasis added]). Thus, to prove that an offender is a
" dangerous sex offender requiring confinement' " within the meaning of section 10.03 (e), the State must show that he or she has an "inability to control sexual misconduct" (Michael M., 24 NY3d at 659 [emphasis added]).
In Michael M., the offender violated the terms of his SIST in multiple (but exclusively nonsexual) ways, and the expert testimony at the SIST revocation hearing "tended to show only that [he] was struggling with his sexual urges, not that he was unable to control himself" (id. at 659). That, held the Court of Appeals, was insufficient to show that Michael M. was a dangerous sex offender requiring confinement within the meaning of Mental Hygiene Law § 10.03 (e). "Notably, the record reveals nothing relevant to the issue of [Michael M.'s] sexual control that occurred between November 15, 2011, when Supreme Court imposed SIST rather than civil confinement, and April 19, 2012, when Supreme Court ordered confinement," and "[w]hatever else might be said about the personality traits or the social circumstances that led [Michael M.] so inexorably to [violating SIST], they do not give any support to the proposition that he had become unable to govern his sexual conduct" (Michael M., 24 NY3d at 659). The Court of Appeals therefore reversed the confinement order and effectively denied the State's SIST revocation petition.
Like our sister Departments, we have rejected the notion that Michael M.'s "inability to control" standard can be satisfied only with evidence of sexually inappropriate behavior while on SIST (see Matter of State of New York v William J., 151 AD3d 1890, 1891-1892 [4th Dept 2017]; accord Matter of State of New York v Jason H., 82 AD3d 778, 780 [2d Dept 2011]; Matter of State of New York v Donald N., 63 AD3d 1391, 1393-1395 [3d Dept 2009]). Just as police officers need not await the "glint of steel" before conducting a protective frisk (People v Benjamin, 51 NY2d 267, 271 [1980]), the State need not await further sexual offending before it concludes that an offender is unable to control his sexual behavior. But William J. should not be read too broadly, for the statutes and case law do not permit the State to confine any sex offender who drinks a beer, smokes marihuana, or jumps a turnstile while on SIST. SIST, after all, is not felony probation, and it should not be treated as such.
Properly understood, our decision in William J. did not (and given Michael M., could not) dispense with the State's ultimate obligation to prove the offender's "inability" to control his sexual conduct. A mere tendency to engage in risky or socially undesirable conduct — even if that conduct provides an opportunity for, or increases the likelihood of, sexual offending — is quintessentially insufficient to establish "inability" under the Michael M. formulation, and William J. does nothing to disturb that rule. Thus, in the absence of evidence of sexually inappropriate conduct while on SIST, it becomes incumbent on the State to demonstrate a persuasive link between a nonsexual SIST violation and the offender's ability to control his sexual behavior (see William J., 151 AD3d at 1891-1892).
Contrary to the State's contention, not just any link will do. In William J., the State [*3]sufficiently linked the offender's nonsexual SIST violation (smoking crack cocaine) to his sex offending with expert testimony that his "sexual arousal has become conditioned to his cocaine usage" (id. at 1891 [emphasis added]). Indeed, according to the record on appeal in that case, William J. admitted to a fixation with receiving oral sex while smoking crack cocaine,[FN2] which respondent's counsel aptly characterized at oral argument in this case as "Pavlovian." This strong fusion between sex offending and smoking crack cocaine was decisive for the majority in William J.
Our decision in Matter of State of New York v Husted (145 AD3d 1637 [4th Dept 2016]) illustrates the other side of the coin. In Husted, the offender violated the terms of his SIST by smoking marihuana and drinking alcohol, and he was thereafter discharged from sex offender treatment due solely to those missteps. As a result, Supreme Court found that Husted required confinement within the meaning of Mental Hygiene Law § 10.03 (e) and granted the State's SIST revocation petition. But we unanimously reversed. Emphasizing the "undisputed" fact that the "alleged violations of [Husted's] SIST conditions related solely to his use of alcohol and marihuana, and not to any alleged sexual conduct," we held that the evidence, even when viewed in the light most favorable to the State, was " insufficient to support the trial court's finding that [Husted] had such an inability to control his behavior that he was likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility' " (id. at 1638, quoting Michael M., 24 NY3d at 660).
Critically, our reversal in Husted was not predicated on the complete absence of any link between the offender's substance abuse and his sex offending. Quite the contrary; according to the record on appeal in that case, the State's expert testified that Husted's substance abuse resulted in an increased risk of reoffending because it was part of his offense cycle and thus could more easily allow him to engage in sex offending behavior. But that link was not strong enough to prove the requisite "inability to control" under Michael M. because it did not suggest that Husted's substance abuse was causing him to become unable to govern his sexual conduct.
The interplay between William J. and Husted demonstrates that a Mental Hygiene Law § 10.03 (e) finding of "inability" based on nonsexual SIST violations will satisfy the Michael M. standard only when such violations bear a close causative relationship to sex offending. Such a relationship is missing here. It is simply not true — as the State claims — that "there is a significant link between respondent's alcohol use disorder and his sex offenses" or that his sex offending is "fueled by his drug and alcohol use." A review of the record citations upon which the State relies for those propositions reveals only that respondent was intoxicated during his sex offending decades ago, and that alcohol use "increases his impulsivity and makes [him] more likely to act out." Unlike in William J., however, no expert has testified that respondent's substance abuse is "strongly fused" or otherwise inextricably intertwined with his sex offending [FN3]. At most, the expert testimony in this case shows that respondent's alcohol use is colocated with his sex offending (and, for that matter, with every other facet of his life), and that alcohol disinhibits him from resisting the urge to offend sexually. But this testimony is virtually identical to the expert testimony in Husted, and that, of course, proved inadequate to meet the State's burden under Michael M.
In arguing for affirmance, the State's brief goes on at length about respondent's underlying crimes (which, as in all Mental Hygiene Law article 10 cases, are necessarily heinous and repugnant), his vaguely-defined and broadly-applicable psychiatric diagnoses, and its own expert's conclusory and often counterfactual prognostications about respondent's future dangerousness. The State also places inordinate emphasis on a single de-contextualized line from the revised written report of respondent's expert, which was subsequently clarified and disavowed at the hearing. By emphasizing these essentially uncontested background facts, the State effectively elides the key question in this appeal: did it adequately prove that respondent is presently "unable" to control his sexual conduct?
In our view, the answer to that question is simply "no." Like Husted, respondent has not offended sexually for years despite a chronic inability to remain sober. Like Husted, respondent has made excellent progress in sex offender treatment and does not display any signs of resuming a cycle of deviant arousal. And like both Husted and Michael M., respondent's wholly nonsexual SIST violations were not connected in any specific manner to sex offending (compare William J., 151 AD3d at 1891-1892). The State has therefore failed to prove, by clear and convincing evidence, that respondent is now "unable to govern his sexual conduct" (Michael M., 24 NY3d at 659 [emphasis added]).
CONCLUSION
Even when viewed in the light most favorable to the State, the evidence at the hearing was legally insufficient to demonstrate that respondent is a " dangerous sex offender requiring confinement' " within the meaning of Mental Hygiene Law § 10.03 (e). Accordingly, the order appealed from should be reversed and the State's petition to
revoke respondent's SIST should be denied.[FN4]



Footnotes

Footnote 1: Respondent also suffers from a number of physical ailments, including blindness, cirrhosis of the liver, and degenerative disc disease.

Footnote 2: We may take judicial notice of our records (see People v Pierre, 129 AD3d 1490, 1492 [4th Dept 2015]).

Footnote 3: See record on appeal, Matter of State of New York v William J. (Case No. CA 16-00794). 

Footnote 4: Respondent's remaining contention is not properly before us (see Matter of State of New York v Breeden, 140 AD3d 1649, 1649 [4th Dept 2016]).
Entered: February 9, 2018
Mark W. Bennett
Clerk of the Court