Matter of State of New York v Raul L. (2020 NY Slip Op 04479)





Matter of State of New York v Raul L.


2020 NY Slip Op 04479


Decided on August 12, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 12, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
ROBERT J. MILLER
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2018-07593
2019-01517
 (Index No. 3858/11)

[*1]In the Matter of State of New York, appellant,
v
Raul L. (Anonymous), respondent.


Letitia James, Attorney General, New York, NY (Steven C. Wu, Seth M. Rokosky, and Joshua M. Parker of counsel), for appellant.
Craig S. Leeds, New York, NY, for respondent.



DECISION & ORDER
In a proceeding pursuant to Mental Hygiene Law article 10 for the civil management of Raul L., a sex offender allegedly requiring civil management, the petitioner appeals from (1) an order of the Supreme Court, Orange County (Catherine M. Bartlett, J.), dated April 5, 2018, and (2) an order of the same court dated January 29, 2019. The order dated April 5, 2018, insofar as appealed from, upon a finding, made after a nonjury trial, that Raul L. suffers from a mental abnormality as defined in Mental Hygiene Law § 10.03(i), and after a dispositional hearing, determined that he is a sex offender requiring strict and intensive supervision and treatment. The order dated January 29, 2019, released Raul L. to the New York State Department of Corrections and Community Supervision to supervise his regimen of strict and intensive supervision and treatment.
ORDERED that the order dated April 5, 2018, is reversed insofar as appealed from, on the facts, without costs or disbursements, the determination that Raul L. is a sex offender requiring strict and intensive supervision and treatment is vacated, Raul L. is determined to be a dangerous sex offender requiring civil confinement, the order dated January 29, 2019, is vacated, and the matter is remitted to the Supreme Court, Orange County, for the imposition of treatment and confinement in accordance with Mental Hygiene Law § 10.10; and it is further,
ORDERED that the appeal from the order dated January 29, 2019, is dismissed as academic, without costs or disbursements, in light of our determination on the appeal from the order dated April 5, 2018.
In 2005, the respondent was convicted, after a jury trial, inter alia, of sodomy in the first degree, burglary in the first degree, and assault in the first degree, and sentenced to prison. The convictions related to acts committed in 2003, in which the respondent broke into a neighbor's home at night while she was sleeping, struck her in the head with a baseball bat, and sexually assaulted her as she was unconscious and bleeding.
When the respondent was nearing release from prison, the State of New York commenced this proceeding pursuant to Mental Hygiene Law article 10 for the civil management of the respondent. After a nonjury trial, at which the respondent proceeded pro se, the Supreme [*2]Court found that the respondent was a detained sex offender who suffers from a mental abnormality (see Mental Hygiene Law § 10.07[d]). Following a dispositional hearing, the court determined that the respondent was a dangerous sex offender requiring confinement (see Mental Hygiene Law § 10.07[d]). On a prior appeal, this Court concluded that the Supreme Court had not conducted an adequate inquiry before permitting the respondent to waive his right to counsel and, accordingly, reversed the order appealed from and remitted the matter for a new trial (see Matter of State of New York v Raul L., 120 AD3d 52).
After a second nonjury trial, the Supreme Court again found that the respondent suffered from a mental abnormality within the meaning of Mental Hygiene Law article 10. That finding is not contested on this appeal. In an order dated April 5, 2018, after a dispositional hearing, the Supreme Court concluded that although the State demonstrated that the respondent would have difficulty controlling his sexual conduct, it failed to prove that he was unable to do so and, thus, failed to demonstrate that he is a dangerous sex offender requiring confinement as defined by Mental Hygiene Law § 10.03(e). Accordingly, the court determined that the respondent is a sex offender requiring strict and intensive supervision and treatment (hereinafter SIST) (see Mental Hygiene Law § 10.07[f]). The State appeals from the order dated April 5, 2018.
The respondent's release to SIST was stalled because the respondent found the proposed SIST conditions "absolutely outrageous" and would not cooperate in the process leading to his transfer from custody to the SIST program. In addition, there were difficulties finding a community treatment program that would accept the respondent because of his lack of progress in prior treatment programs and concerns of staff safety in light of prior threats and attacks by the respondent on treatment staff. Over the respondent's objections, the Supreme Court directed the release of his treatment records in order to assist in SIST placement. In January 2019, based upon the respondent's unwillingness to cooperate with his release to SIST and his behavior during the court proceedings, the State moved, inter alia, to vacate the April 5, 2018, order determining that SIST was appropriate for the respondent. The court denied the motion on the record, and, in an order dated January 29, 2019, released the respondent to the New York State Department of Corrections and Community Supervision to supervise his regimen of SIST. The State appeals from the order dated January 29, 2019. This Court stayed enforcement of the January 29, 2019, order pending hearing and determination of the appeal.
In a proceeding pursuant to Mental Hygiene Law article 10, once the fact-finder has determined that the respondent is a detained sex offender who suffers from a mental abnormality, then the court must determine whether the respondent is either a dangerous sex offender requiring confinement, or a sex offender requiring SIST (see Mental Hygiene Law § 10.07[f]). A "mental abnormality" within Mental Hygiene Law article 10 "means a congenital or acquired condition, disease or disorder that affects the emotional, cognitive, or volitional capacity of a person in a manner that predisposes him or her to the commission of conduct constituting a sex offense and that results in that person having serious difficulty in controlling such conduct" (Mental Hygiene Law § 10.03[i]). In determining whether a respondent requires confinement or SIST, the statute directs that "[i]f the court finds by clear and convincing evidence that the respondent has a mental abnormality involving such a strong predisposition to commit sex offenses, and such an inability to control behavior, that the respondent is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility, then the court shall find the respondent to be a dangerous sex offender requiring confinement" (Mental Hygiene Law § 10.07[f]). "The statute . . . envisages a distinction between sex offenders who have difficulty controlling their sexual conduct and those who are unable to control it. The former are to be supervised and treated as outpatients' and only the latter may be confined" (Matter of State of New York v Michael M., 24 NY3d 649, 659; see Matter of State of New York v Ted B., 174 AD3d 630, 632).
In reviewing a determination made after a nonjury trial or hearing, the power of the Appellate Division is as broad as that of the trial or hearing court, and it may render the judgment it finds warranted by the facts, taking into account that in a close case, the trial or hearing judge had the advantage of seeing and hearing the witnesses (see Northern Westchester Professional Park Assoc. v Town of Bedford, 60 NY2d 492, 499; Matter of State of New York v Abdul A., 123 AD3d [*3]1047, 1048). Here, we find that the evidence is clear and convincing that the respondent's mental abnormality involves such a strong predisposition to commit sex offenses, and such an inability to control behavior, that he is likely to be a danger to others and to commit sex offenses if not confined to a secure treatment facility at this time.
Throughout the entirety of the respondent's confinement and incarceration, he has never successfully completed any sex offender treatment program. The respondent was violent and "destructive" in group therapy, and repeatedly threatened and assaulted his treatment providers and other staff members. During interviews with treatment providers and evaluators, the respondent threatened to kill the judge who sentenced him; indicated that he derived excitement out of humiliating, tormenting, hunting, and hurting other people; and indicated that he kept a "revenge" list in his mind of people he intended to retaliate against. The respondent also repeatedly feigned psychiatric illnesses that he did not have in an attempt to manipulate the evaluators. Up until the time of the subject dispositional hearing, the respondent continued to make threats and express a desire to kill facility staff members.
The respondent has indicated that he believes that he did not commit a sex offense, and has repeatedly denied responsibility for his actions, maintaining that his impulse to commit the subject offense was caused by a reaction to certain medications he was taking for mental illness at the time, a theory that was rejected by the jury at trial and by the State's experts throughout these proceedings. When testifying at the dispositional hearing, the respondent refused to discuss the commission of the subject crime, and was unable to identify what caused him to sexually offend or to identify the triggers to his behavior.
The State presented the testimony of two experts, each of whom opined to a reasonable or high degree of psychological certainty that the respondent is a dangerous sex offender requiring confinement. Both experts diagnosed the respondent with several disorders that affect his emotional, cognitive, or volitional capacity in a manner making it likely that the respondent would engage in recidivist violent sexual offense behavior again. Both experts' testimony also established that the respondent is presently unable to control his behavior because he has steadfastly refused to meaningfully engage in any treatment program. Each of the experts believed that the respondent's disorders were treatable, but because the respondent had not successfully completed treatment to resolve his disorders, deviance, offense cycle, or triggers, the disorders remained untreated, and the respondent lacked the ability to control his behavior.
The respondent presented the testimony of a psychiatrist who had never been involved with a dispositional hearing under article 10 of the Mental Hygiene Law, and could not render an opinion as to whether the respondent suffered from a mental abnormality or whether confinement was required. Consequently, the State's evidence was unrebutted.
In view of the foregoing, we disagree with the Supreme Court's determination that the respondent is a sex offender requiring SIST, and we determine that the respondent is a dangerous sex offender requiring civil confinement. Accordingly, we reverse the order dated April 5, 2018, insofar as appealed from, and remit the matter to the Supreme Court, Orange County, for the imposition of treatment and confinement in accordance with Mental Hygiene Law § 10.10. In light of our determination on the appeal from the order dated April 5, 2018, we dismiss the appeal from the order dated January 29, 2019, as academic.
MASTRO, J.P., MILLER, MALTESE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court